UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NIKOLITSA WOOTEN,

     Plaintiff,

v.                                 Case No.:  8:24-cv-701-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Nikolitsa Wooten seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on October 27, 2020, alleging disability beginning on June 8, 2020. (Tr. 169, 293-94). The application was denied initially and on reconsideration. (Tr. 169, 191). Plaintiff requested a hearing, and on December 2, 2022, a hearing was held before

Administrative Law Judge Rita Foley ("ALJ"). (Tr. 75-110). On February 22, 2023, the ALJ entered a decision finding Plaintiff not under a disability from June 8, 2020, through the date of the decision. (Tr. 30-66). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request May 10, 2023. (Tr. 13-18). Plaintiff filed a Complaint (Doc. 1) on March 20, 2024, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 32). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 8, 2020, the alleged onset date. (Tr. 33). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, fibromyalgia, migraine headaches, inflammatory bowel disease, gastroesophageal reflux disease (GERD), depression, anxiety, and post-traumatic stress disorder (PTSD)." (Tr. 33). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 34).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) with exceptions. The claimant can stand and walk about six hours in an eight hour work day. She can sit about six hours in an eight hour work day. The claimant can never climb ladders, ropes or scaffolds and can never crawl. She can occasionally climb ramps or stairs, stoop, crouch and kneel. The claimant can occasionally reach overhead with the bilateral upper extremities, but has no limitations on reaching in any other direction or plane. She can have no exposure to unprotected heights and can never operate dangerous machinery. She can have occasional exposure to extreme cold; extreme heat; industrial vibration; environmental pulmonary irritants, such as fumes, odors, dusts and gases; and, noise level above the average modern office setting (SCO Noise Level 3). The claimant is limited to routine and repetitive tasks, performed in a work environment free from fast-paced, assembly-line type production requirements, involving only simple work-related decisions, and with few, if any, work place changes. She can have occasional interaction with coworkers, but can perform no tandem tasks. She can have occasional interaction with the public. In addition to regularly scheduled breaks, the claimant would be off task up to five percent (5%) of the time during an eight hour work day, due to the possibility of increased restroom usage.

(Tr. 37).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a basic infantryman, soldier, or logistics officer. (Tr. 64). At step five, the ALJ found that considering Plaintiff's age (48 years old on the alleged onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could

perform. (Tr. 65). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   Office Helper, DOT[1] 239.567-010, light, unskilled, SVP 2

(2)   Router, DOT 222.587-038, light, unskilled, SVP 2

(3)   Marker, DOT 209.587-034, light, unskilled, SVP 2

(Tr. 66). The ALJ concluded that Plaintiff had not been under a disability from June 8, 2020, through the date of the decision. (Tr. 66).

## II.    Analysis

On appeal, Plaintiff raises two issues:

(1)    Whether the ALJ committed harmful error when she found the opinions of the State agency psychological consultants to be persuasive, but rejected portions of their opinions without explanation; and

(2)    Whether the ALJ properly evaluated Plaintiff's subjective statements, including Plaintiff's daily activities, need for medication, and the episodic nature of Plaintiff's PTSD and panic attack impairments.

(Doc. 8, p. 9).

## A.    State Agency Psychological Consultants' Opinions

Plaintiff argues that even though the ALJ found both State agency consultants' opinions persuasive, the ALJ erred in failing to adopt all the limitations these consultants found. (Doc. 8, p. 11). The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will

be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

In the decision, the ALJ considered the opinions of State agency psychological consultants, T. Tomori, Ph.D. and Lawrence Annis, Ph.D. and found these opinions persuasive. (Tr. 60). The ALJ summarized their findings:

> The consultative psychologists determined the claimant had moderate limitations in the areas of interacting with others,

> concentrating, persisting or maintaining pace, and adaptation consistent with the information in her mental health records. The limitations opined are supported by the findings in her records of irritable, agitated, and anxious moods and the records also show her symptoms can be exacerbated by stress, supporting the limitation to the complexity of her tasks and further supporting the limitation to her interactions with co-workers and the public. These accommodations also support difficulty with adaptation.

(Tr. 60).

In assessing an RFC, an ALJ will consider the opinions of medical providers, but these opinions are not dispositive. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). Instead, a claimant's RFC "is a matter reserved for the ALJ's determination" alone after consideration of all the medical and other evidence of record. *Id.* An ALJ may consider prior administrative medical findings persuasive but does not have to defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *See Torres*, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

In this case, the ALJ considered the medical opinions of both Dr. Tomori and Dr. Annis in assessing the RFC and found them persuasive. The Commissioner contends that the ALJ properly assessed these State Agency psychological consultant's opinions and did not err. (Doc. 12, p. 5). The Court agrees.

Plaintiff argues that even though the ALJ found these opinions persuasive, she did not adopt the limitations in interacting with others and adapting to the workplace that "were suggested by these consultants." (Doc. 8, p. 11). Plaintiff argues that the ALJ failed to include Dr. Tomori's limitation findings of Plaintiff: (1) being able to interact with the public on a "'superficial and infrequent basis'" only; (2) potentially responding "'poorly to criticism from supervisors;'" and (3) possibly distracting coworkers at times. (Doc. 8, p. 12-14). Plaintiff also argues that the ALJ erred in by not adopting Dr. Annis's opinion that Plaintiff would benefit from working with a "'nonconfrontational supervisor" and would be able to adapt to changes in routine only "'after an initial employment period.'" (Doc. 8, p. 14).

Beginning with the limitation that Plaintiff could have only superficial and infrequent contact with the public, the ALJ similarly found Plaintiff could perform light work with additional limitations, including a limitation to occasional interaction with the public. (Doc. 8, p. 12; Tr. 37). To reach this determination, the ALJ scrutinized the medical evidence in this case as shown by the lengthy summary of the medical and other evidence of record. (Tr. 37-60). The ALJ also adopted Dr. Tomori's finding that Plaintiff had moderate limitations in interacting appropriately with the general public. (Tr. 36, 164). While the ALJ did not adopt the specific language used by Dr. Tomori, the ALJ included a limitation to occasional interaction with the public, which incorporates Dr. Tomori's findings. *See Matos v. Comm'r of*

*Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022) (affirming an ALJ's RFC limitation to occasional interaction with others, even though the State agency psychological consultant found the claimant "could have only 'limited and superficial social interaction'"). Thus, the ALJ did not err in failing to adopt the specific language of Dr. Tomori.

Second, Plaintiff claims that the ALJ erred by not including Dr. Tomori's limitation that Plaintiff "may respond poorly to criticism from supervisors and may at times distract co-workers with social withdrawal." (Doc. 8, p. 12-14). Both limitations include the word "may," making them equivocal statements. As a result, the ALJ did not err by failing to adopt these limitations.

Third, Plaintiff argues that the ALJ erred by not adopting Dr. Annis's opinion that Plaintiff would benefit from working with a "'nonconfrontational supervisor" and would be able to adapt to changes in routine only "'after an initial employment period.'" (Doc. 8, p. 14). Dr. Annis stated, Plaintiff "may benefit from working with a nonconfrontational supervisor," and she "should be better mentally able to adapt to change in routine after an initial employment period." Again, these statements include the words "may" and "should," both of which are equivocal and describe more of an ideal work environment for Plaintiff than an actual limitation. Thus, the ALJ did not err by failing to incorporate these limitations.

For these reasons and taking the record as a whole, substantial evidence supports the ALJ's consideration of the State agency psychological consultants' opinions. Substantial evidence also supports the ALJ's RFC assessment and the ALJ did not err.

**B.    Subjective Statements**

Plaintiff argues that the ALJ failed to properly consider her subjective complaints and testimony in assessing the RFC. (Doc. 8, p. 16-17). Generally, a claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other

symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and

(7) other factors concerning a claimant's functional limitations and restrictions due

to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v.*

*Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record.

*Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must

clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395

F.3d at 1210). The ALJ may consider the consistency of the claimant's statements

along with the rest of the record to reach this determination. *Id.* Such findings "'are

the province of the ALJ,' and we will 'not disturb a clearly articulated credibility

finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc.*

*Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the

decision is not a "broad rejection which is not enough to enable [a reviewing court]

to conclude that the ALJ considered [the claimant's] medical condition as a whole."

*Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

Plaintiff acknowledges that the ALJ considered and evaluated the extensive

medical evidence, and also acknowledges that the ALJ recited the appropriate factors

in considering Plaintiff's subjective complaints. (Doc. 8, p. 16). Even so, Plaintiff

argues that the ALJ mischaracterized the record as to Plaintiff's subjective

complaints. (Doc. 8, p. 17). Plaintiff contends that the ALJ mischaracterized: (1)

Plaintiff's daily activities; (2) the frequency of her panic attacks and pain symptoms; and (3) the episodic and unpredictable nature of Plaintiff's PTSD. (Doc. 8, p. 17-20).

In the decision, the ALJ thoroughly summarized Plaintiff's testimony and her subjective complaints, including, but not limited to, her complaints of PTSD, panic attacks, spinal problems, neck pain, difficulty walking, migraines, and gastrointestinal impairments. (Tr. 38-39). After this summary, the ALJ generally found:

> that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> In terms of the claimant's alleged impairments with their accompanying symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the evidence of record as a whole. The residual functional capacity herein reasonably accommodates the claimant's limitations as substantiated by the objective findings in the record evidence.

(Tr. 39).

After a thorough summary of the medical evidence, the ALJ again discussed Plaintiff's subjective complaints. The ALJ found:

> In any case centered on an individual's subjective complaints, the undersigned must evaluate the consistency of the claimant's subjective complaints and allegations with the

> overall evidence in the file. The claimant's allegations of
> disability are not consistent with the overall evidence. The
> primary reason is that the objective medical and mental health
> records do not establish conditions that produced disabling
> limitations.

(Tr. 58). The ALJ then cited the regulations to assess a claimant's subjective
complaints and listed the relevant factors. (Tr. 58). The ALJ found the record
reflected that Plaintiff had no limitations in activities of daily living greater than
those found in the RFC. (Tr. 58).

Plaintiff argues that her activities of daily living do not support the RFC
assessment. (Doc. 8, p. 17). Plaintiff contends that for personal care, Plaintiff
testified that when she has vertigo or is in too much pain, her husband helps her get
to the bathroom and helps her bathe. (Doc. 8, p 17). Plaintiff also argues that she
testified that she does not drive because of panic attacks. (Doc. 8, p. 17). Finally,
Plaintiff argues that she cannot watch a two-hour movie or a thirty-minute television
show because of lack of focus and concentration. (Doc. 8, p. 18).

In the decision, the ALJ considered all these subjective complaints. (Tr. 58-
59). The ALJ noted that Plaintiff testified she can perform personal care except when
she has vertigo or too much pain and then her husband helps her get to the bathroom
and helps her bathe. (Tr. 58). The ALJ also noted that Plaintiff claims she does not
drive based on panic attacks and that she cannot watch a two-hour movie or a thirty-

minute television show because of poor focus, concentration, or lack of interest. (Tr. 58-59).

Unlike these statements, the ALJ summarized Plaintiff's activities of daily living earlier in the decision:

> In addition, the claimant has reported trying to get out in the community more with activities such as joining a soccer team. She and her husband go for walks and bike rides and she reported enjoying visits from family members. She even reported enjoying going to an obstacle race with her family and friends and being able to manage her symptoms when visiting the Atlanta Aquarium. She also travels. She reported going to visit her daughter to assist her in findings an apartment, going on a cruise, and traveling to Greece to visit her mother (Exhibits 1F/131; 13F/106, 112, 136; and, 30F/38, 59). . Moreover, in contradiction of her reported physical limitations, the claimant has reported participating in running with distances of 7 and 10 miles at time and has reported engaging in Pilates and yoga, going to the community pool, and going to the gym (Exhibits 7E; 1F/131, 133, 178, 197, 500; 594-595; and 13F/118, 164, 176, 196). These activities were considered together with the other information in her records showing limitations and with the claimant's reports that she does not engage in these activities as frequently as she previously did. However, the presence of multiple reports of engaging in these type of activities indicates that the claimant's abilities have, at least at times, been somewhat greater than the claimant has generally reported.

(Tr. 40). Thus, the ALJ considered Plaintiff's function reports and testimony as well as activities of daily living that showed a somewhat greater ability than Plaintiff reported and assessed the RFC accordingly. Reviewing the record as a whole, substantial evidence supports the ALJ's consideration of Plaintiff's activities of daily living.

Plaintiff next argues that the ALJ did not properly consider Plaintiff's panic attacks and pain. (Doc. 8, p. 18-19). Plaintiff claims that she continued to report serious pain, which interfered with her daily activities. (Doc. 8, p. 19). In the decision, the ALJ discussed the location, duration, frequency, and intensity of Plaintiff's pain and mental health symptoms. (Tr. 60). She found, "[h]owever, the frequency and intensity of her symptoms as shown in the evidence do not support the need for greater limitations." (Tr. 60). The ALJ also stated she included specific limitations in the RFC, such as a limitation to light work with restricted postural activities and reaching to avoid exacerbation of her symptoms. (Tr. 60). In addition, earlier in the decision the ALJ noted that the objective and subjective information in the record supports the RFC limitations. (Tr. 41). The ALJ found that Plaintiff participated in ongoing treatment for her conditions, including pain management and physical therapy as well as mental health therapy. (Tr. 41). The ALJ found that these records showed improvement in her symptoms and while the evidence documented a need for limitations in the RFC, it did not demonstrate any greater need. (Tr. 41). Overall, the ALJ thoroughly considered Plaintiff's subjective complaints of pain and panic attacks in assessing the RFC and substantial evidence supports the ALJ's consideration of Plaintiff's complaints of pain and panic attacks.

Lastly, Plaintiff argues that the ALJ failed to consider the episodic nature of Plaintiff's PTSD, which includes panic attacks as a direct result of her military

service. (Doc. 8, p. 19-20). Plaintiff claims that the ALJ focused her analysis entirely on Plaintiff's functioning during periods of stability. (Doc. 8, p. 20). Not so. The ALJ thoroughly summarized all of the medical and other evidence of record. Indeed, the ALJ noted that Plaintiff was treated for PTSD, depression, and anxiety, which caused moderate difficulty in interacting with others, concentrating, persisting or maintaining pace, and adaption. (Tr. 39). The ALJ then included limitations in the RFC, such as tasks limited in complexity and pace, and limitations in decision making and changes in the workplace to reduce stress and avoid triggering her symptoms. (Tr. 39). The ALJ also found:

> These limitations are supported by the claimant's reports of aggravation of her symptoms with increased stress or exposure to triggers and she consistently reports having difficulty being in crowds and getting along with others (see Exhibits 7E, 15E, 1F/594-595, 627, 630, 642; and, 13F/164). However, her records also show she is learning to manage her symptoms and has benefited from therapy and medications. Further, she is shown to get along well with providers and is generally noted to be cooperative, pleasant, and in no acute distress even when exhibiting symptoms of anxious mood, agitation, or irritability. She is routinely noted to have normal thought processes and thought content and most often has adequate concentration and attention along with intact memory. In addition, her mental status examination show her to be alert, oriented, and engaged in her sessions or appointments even when experiencing increased symptoms (see Exhibits 1F/124-125; 277, 397-398, 452, 508, 513, 627, 630, 709-710; 3F/32; 7F/129, 166, 198, 209; 15F/176, 228; 16F/6-7, 10-11; 20F/25; 26F5-6; 29F/9-10; 25F/254; 26F/15, 29, 129, 180; and, 30F/9, 16, 23, 38, 85).

(Tr. 39). The ALJ considered Plaintiff's subjective complaints about her PTSD and the episodic nature of this impairment, but found that Plaintiff was learning to

manage her symptoms, benefited from medications and therapy, and even when exhibiting symptoms had a generally normal mental status. (Tr. 39).

Plaintiff cites *Levesque v. Comm'r of Soc. Sec.*, No. 8:22-CV-995-DNF, 2023 WL 5125207, at *3 (M.D. Fla. Aug. 10, 2023), for the proposition that it is harmful error if the ALJ focuses entirely on Plaintiff's functioning during stable times. (Doc. 8, p. 20). Plaintiff argues that as in *Levesque*, the ALJ here "ignores the unpredictable nature" of PTSD. (Doc. 8, p. 20 (quoting *Levesque*, 2023 WL 5125207, at *3)). *Levesque* is distinguishable. Here, the ALJ acknowledged that Plaintiff's PTSD symptoms could be aggravated by stress or exposure to triggers, but found that Plaintiff is learning to manage her symptoms and benefitted from both medications and therapy. (Tr. 39). The ALJ also found that Plaintiff had generally normal mental status exams even when she exhibited symptoms of anxious mood, agitation, or irritability. (Tr. 39). Further, the ALJ acknowledged that Plaintiff's symptoms could be aggravated by stress or exposure to triggers such as difficulty with being in crowds and getting along with others. (Tr. 39). For those reasons, the ALJ included limitations in the RFC to reduce stress and avoid triggers. (Tr. 39). The ALJ also noted that Plaintiff was getting out in the community more by joining a soccer team, going for walks, riding bikes, visiting family members, going to the Atlanta Aquarium, and traveling. (Tr. 39). These activities support Plaintiff's ability to manage her symptoms.

Here, the ALJ reviewed and thoroughly considered the medical and other evidence of record, including Plaintiff's subjective complaints. After a review of the entire record and for the above reasons, substantial evidence supports the ALJ's consideration of Plaintiff's subjective complaints. In addition, substantial evidence also supports the RFC assessment in accommodating Plaintiff's limitations from her subjective complaints.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 14, 2025.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties